UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PEOPLES GAS SYSTEM, a division of
Tampa Electric Company, a Florida
corporation.,

vs.                                    Case No.   2:11-cv-231-FtM-29SPC

POSEN CONSTRUCTION, INC., a Michigan
corporation,

                Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on Peoples Gas System's Motion to Dismiss Count III of Defendant Posen Construction, Inc.'s Amended Counterclaim With Prejudice (Doc. #27) filed on January 4, 2012.  Defendant filed a Response (Doc. #30) on February 13, 2012. Plaintiff seeks to dismiss Count III (strict liability for an ultra-hazardous activity) of defendant's Amended Counterclaim (doc. #24).

**I.**

On November 14, 2011, the Court issued an Opinion and Order (Doc. #23) dismissing Count IV of defendant's Counterclaim (Doc. #8) and finding that "Posen may be able to state a claim for strict liability which is plausible, but it has not done so on the theory it now asserts."  (Doc. #23, pp. 6-8.)  As summarized in the Opinion and Order,

>      Posen Construction, Inc. (Posen) is a heavy
> construction contractor that was awarded a construction
> contract from Lee County to widen Colonial Boulevard in
> Fort Myers, Florida. Peoples Gas System (PGS), a
> division of Tampa Electric Company, owns, operates,
> maintains and controls natural gas distribution
> facilities throughout Florida, including an 8" gas main
> on the northern side of the Colonial Boulevard
> construction project. On November 11, 2010, a Posen
> employee operating heavy machinery struck a natural gas
> pipeline owned and operated by PGS, resulting in an
> ignition of natural gas. PGS filed suit against Posen,
> which has responded with a counterclaim.

(Doc. #23, p. 3.) Taking all the allegations in the Amended Counterclaim as true, Erickson v. Pardus, 551 U.S. 89 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011): As part of the maintenance, PGS is often required to move, relocate, and/or divert gas lines, and PGS moved the line at issue in this case without notice to Posen of the new location. (Doc. #24, ¶¶ 61, 62.) PGS relocated the gas line at issue directly under the area for roadway expansion and a depth directly in the area of work Posen planned for the construction project. PGS allowed the line to be raised from its original depth to a level only inches below the surface of the ground making it all but certain that it would be struck during construction. (Id., ¶ 63.) The manner in which PGS relocated the gas line increased the risk of harm to Posen and others, and it is abnormal and unusual, and uncommon, for the owner of a gas line to intentionally and knowingly move and/or relocate a line to a location and depth directly in the zone of construction work and in conflict with construction plans. (Id., ¶¶ 64, 65.)

Moving, relocating and/or diverting gas distribution facilities can be a dangerous activity, and doing so at a depth directly within a zone of planned construction and excavation without notice is an abnormally dangerous activity and poses a high risk of serious harm due to the combustible nature of natural gas. (Id., ¶¶ 68, 69.) Posen sustained property and financial damage from the activity, and the damages are the kind that would arise from the negligent and/or improper moving, relocating, and/or diverting of natural gas distribution facilities. (Id., ¶¶ 70, 71.)

## II.

"One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm. [ ] This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." Restatement (Second) of Torts § 519 (1977). The term "care" includes "care in preparation, care in operation and skill both in operation and preparation." Id. cmt. c. "The liability arises out of the abnormal danger of the activity itself, and the risk that it creates, of harm to those in the vicinity." Id. ctm. d.

> The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and

inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence.

Restatement (Second) of Torts § 520 cmt. f (1977).

It is undisputed that Florida courts have not found the *distribution* of gas to be an "abnormally dangerous activity" for purposes of strict liability. In the negligence context however, Florida courts have found that the installation of natural gas lines is an inherently dangerous activity. <u>Noack v. B. L. Watters, Inc.</u>, 410 So. 2d 1375, 1376 n.1 (Fla. 5th DCA 1982)(citing cases). Under the amended allegations, defendant asserts that it is the *relocation* of the gas line that is the "abnormally dangerous activity" subject to strict liability. To determine if the relocation of the gas line is an "abnormally dangerous activity", thereby triggering strict liability, the Court considers the following factors:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977). To be an "abnormally dangerous activity", "not only must it create a danger of physical harm to others but the danger must be an abnormal one. In general, abnormal dangers arise from activities that are in themselves unusual, or from unusual risks created by more usual activities under particular circumstances." Id. at cmt. f. There is no one definition, not all factors must be present, and the risk must be so unusual as to justify the imposition of strict liability. Id.

**A. High Degree of Risk and Likelihood of Harm**:

"The harm threatened must be major in degree, and sufficiently serious in its possible consequences to justify holding the defendant strictly responsible for subjecting others to an unusual risk. It is not enough that there is a recognizable risk of some relatively slight harm. . . ." Restatement (Second) of Torts § 520 cmt. g (1977). In determining whether there is a major risk, it may be necessary to take into account the locality. Id. The Court finds that, even when considering the risk of harm associated with relocating gas lines near populated areas, the risk of harm is not so abnormally high such that strict liability is appropriate. The absence of case law involving the relocation of pipelines is a clear indicator. Also, due consideration must be given to the fact that the lines have to be located in populated areas, usually along major roadways, so that natural gas is made available without significant interruption to the community.

In Henke, the court refused to accept the differentiation between maintaining the pipeline and operation of a pipeline, which the court had previously found as a matter of law was not an abnormally dangerous activity. Henke v. ARCO Midcon, LLC, 750 F. Supp. 2d 1052, 1059 (E.D. Mo. 2010)(citing Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255 (W.D. Mo. 2001)). Therefore, this factor weighs against defendant.

**B. Exercise of Reasonable Care**:

"Most ordinary activities can be made entirely safe by the taking of all reasonable precautions; and when safety cannot be attained by the exercise of due care there is reason to regard the danger as an abnormal one." Restatement (Second) of Torts § 520 cmt. h (1977). The relocation of gas lines due to construction is an ordinary enough activity that it can be made safe with precautions and the exercise of reasonable care.

**C. Common Usage**:

"An activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community. It does not cease to be so because it is carried on for a purpose peculiar to the individual who engages in it." Restatement (Second) of Torts § 520 cmt. i (1977). Gas and electricity in household pipes and wires is a matter of common usage and therefore not abnormal. Id. "The difference is sometimes not so much one of the activity itself as of the manner

in which it is carried on." Id. The relocation of gas lines due to construction in the area is common enough that The Underground Facility Damage Prevention and Safety Act was enacted to "provide a single toll-free telephone number for excavating contractors and the general public to call for notification of their intent to engage in excavation or demolition." Fla. Stat. § 556.101(2). One purpose of the Act is to prevent injury and interruption of services for the public. Fla. Stat. § 556.101(3)(a). The Court finds that this factor also weighs against defendant.

**D. Locality:**

"There are some highly dangerous activities, that necessarily involve a risk of serious harm in spite of all possible care, that can be carried on only in a particular place. Coal mining must be done where there is coal; oil wells can be located only where there is oil; and a dam impounding water in a stream can be situated only in the bed of the stream. If these activities are of sufficient value to the community (see Comment k), they may not be regarded as abnormally dangerous when they are so located, since the only place where the activity can be carried on must necessarily be regarded as an appropriate one." Restatement (Second) of Torts § 520 cmt. j (1977). Obviously, gas lines are located in many major cities and in populated areas so that the natural gas can be distributed to communities in those cities. See, e.g., Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255, 1261 (W.D. Mo. 2001)(transmission

of natural gas by pipeline is a common activity in "highly-industrialized society")(collecting cases). By the same token, the relocation of gas lines to accommodate growth and new construction is inevitably going to occur along highways. See Foster v. City of Keyser, 501 S.E. 2d 165, 175-76 (W. Va. 1997)("Gas transmission lines are often buried, sometimes quite deeply. . .so inspection, maintenance and repair is not simple. Escaping gas can flow easily and quickly though a path of least resistance, which in populated areas is often along or through other utility pipes or drains into buildings."). Therefore, the Court finds that the location was not inappropriate.

**E. Value to Community:**

"Even though the activity involves a serious risk of harm that cannot be eliminated with reasonable care and it is not a matter of common usage, its value to the community may be such that the danger will not be regarded as an abnormal one. This is true particularly when the community is largely devoted to the dangerous enterprise and its prosperity largely depends upon it." Restatement (Second) of Torts § 520 cmt. k (1977). For example, in Texas, "a properly conducted oil or gas well" is not regarded as abnormally dangerous. Id. "It is no part of the province of the jury to decide whether an industrial enterprise upon which the community's prosperity might depend is located in the wrong place or whether such an activity as blasting is to be permitted without

liability in the center of a large city." Id. at cmt. l. Even if the actual relocation of the gas lines was not common, the value to the community and the ability to access natural gas clearly would weigh in favor of plaintiff.

Considering all the factors together, the Court finds that the relocation of a gas line in response to construction does not constitute an abnormally dangerous activity subject to strict liability.

Accordingly, it is now

**ORDERED**:

Peoples Gas System's Motion to Dismiss Count III of Defendant Posen Construction, Inc.'s Amended Counterclaim With Prejudice (Doc. #27) is **GRANTED** and Count III of the Amended Counterclaim is dismissed with prejudice. The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __20th__ day of June, 2012.

_____
JOHN E. STEELE
United States District Judge


Copies:
Counsel of record